## STATE EX REL. ARTHUR A. CHATLOS
*vs.*
## HENRY L. ROWLAND

Superior Court      Fairfield County      File No. 67082

MEMORANDUM FILED DECEMBER 14, 1943.

*John J. Hunt,* of Bridgeport, for the Plaintiff.

*John V. Donnelly,* of Bridgeport, for the Defendant.

O'SULLIVAN, J.   The aim of this action is to obtain an order compelling the respondent, as secretary of the Bridgeport Zoning Commission, to endorse an application for an all-alcoholic liquor restaurant permit sought by the relator.

The facts are not in dispute. They are these: Since June 30, 1942, Arthur A. Chatlos has been running a restaurant at No. 437 Huntington Turnpike and, in connection therewith, has been selling beer under a permit issued by the State Liquor Control Commission. When he commenced business, a zoning ordinance was in force, one of whose provisions prohibited, in a Business Zone No. 3, the sale of alcoholic liquor under a tavern, restaurant, or all-alcoholic liquor package store permit. This provision was of no moment to the relator at the time. However, on August 31, 1942, the area around and including the site of the restaurant was reclassified by the proper authori-

tise and changed to a Business No. 3 Zone. From then on, his sales of beer became a nonconforming use.

Some time before July 16, 1943, Chatlos decided to apply for a permit authorizing the sale not only of beer but of all sorts of intoxicating liquor. Accordingly, he prepared an appropriate application addressed to the Liquor Control Commission and, because the Commission so requirees, presented it to the respondent with the request that the latter certify that no ordinance banned the sale of all varieties of alcoholic liquors at the location of the restaurant. The respondent having refused to comply with the request, Chatlos petitioned for and obtained the issuance of an alternative writ of mandamus. Thereafter, in sequence, a return, reply and rejoinder were filed, which, with the allegations of the writ, presented two questions: (1) is the sale of whiskey, gin, brandy and the like an extension of the nonconforming use of the sale of beer? (2) If the answer to the first question is in the affirmative, is the extension prohibited by the ordinance? These are the only questions the relator raises.

As to the first, it would seem to answer itself. There is a great difference between beer and spirituous liquor, and the character of an establishment dealing with the former may be quite different from one dispensing the latter. This distinction, it might be observed, has received legislative recognition in that the Assembly has provided for different types of permit for the sale of various alcoholic beverages. It is not without significance that the fee for a restaurant beer permit is $150 while the State demands five times that amount from one seeking to sell liquor in all of its variegated forms and concoctions. Such a large fee is an indirect method of controlling a business more capable of abuse than the other. It acts as an urge upon the permittee to protect his investment by guarding against the greater danger of abuse inherent in the use of potent beverages. I would not be understood as holding that this feature was the sole motive in setting the fees for the two types of permit. It is referred to as indicative of the legislative viewpoint that a real difference exists between an establishment selling beer and one selling spirituous liquor.

The ordinance likewise notes the distinction. It bans sales under (1) a tavern, (2) a restaurant and (3) an all-alcoholic

liqu~r package store permit, a classification expressing a scale rather in crescendo.

Trade gravitates towards those places where the desired alcoholic liquor may be obtained. This increases the burden on the neighborhood, not because more customers are served, but rather because the ever-lurking dangers that accompany the abuse of any form of intoxicating liquor increase in proportion to the amount of patronage. The spirit of the zoning laws is to hold in check and eventually to eliminate certain kinds of business enterprise that are alien to the locality, as, for example, one devoted to high-grade dwellings. In the instant case, it may be noted, a substantial area surrounding the Chatlos restaurant is classified as the highest type of residential zone. If Chatlos is to sell hard liquor in the future, he doubtless will retain his present customers and add others attracted to his place by a desire for more dynamic libations.

I am thoroughly satisfied that a change of the relator's license for the limited sale of beer to one without restriction as to the kind of liquor that may be sold would constitute not only an increase, but a substantial one, in the nonconforming use of the premises.

This miters with the spirit and intent of zoning legislation. "The ultimate purpose is to confine certain classes of....uses to certain localities and the attainment of this necessarily requires that ....uses, in each zone or district, which do not conform to the general restrictions applying therein shall eventually be eliminated." *Lathrop vs. Town of Norwich,* 111 Conn. 616, 622.

This conclusion brings us to the second question: Is such increase or extension prohibited by the ordinance? Found in the ordinance is the following: "Sec. III. C. 9. No building or premises located in a Business No. 3 Zone shall be used for the sale of alcoholic liquor under any tavern, restaurant or all-alcoholic liquor package store permit issued by the Liquor Control Commission of the State of Connecticut."

It was the foregoing provision, adopted on April 10, 1942, coupled with the reclassification on August 28, 1942, to a Business No. 3 Zone of the area which includes the relator's restaurant that made the sale of beer a nonconforming use.

On this subject, the ordinance has this to say: "Sec. VII.

Any nonconforming use existing at the time of the passage of these regulations may be continued and any existing building designed, arranged, intended, or devoted to a nonconforming use may be constructed and structually altered, and the nonconforming use therein changed subject to the following regulations."

The regulations which then follow are seven in number and serve as limitations upon the rights conferred on nonconforming uses by the provisions of the section just quoted, but further detailed reference to them seems unnecessary because of their irrelevance to the present problem.

The quotation, which will be referred to as section VII, is a legislative expression of two ideas. The first, found in the beginning of the section, permits a continuance of all uses existing when the ordinance or any of its regulations went into effect. This, of course, was to avoid an attack upon its constitutionality. The latter part of the ordinance subsequent to the first "and" is concerned with the privilege of changing a nonconforming use in a building, housing such a use, which is to be reconstructed and altered. (The word "constructed" was obviously intended to refer to reconstruction.) By the very last part of the section, a nonconforming use in an altered building may be changed, subject, of course, to the seven regulations previously noted. The word "therein" is a definite limitation as to the extent to which nonconforming uses may be changed.

To accept the relator's claim that section VII authorizes an increase of his nonconforming use would do violence to the spirit as well as to the literal meaning of the ordinance. Indeed, his claim, if followed, would almost annihilate it, for if *he* may increase his use, so may every other nonconforming user do likewise. The result would be apparent without further comment.

The change allowable by section VII, I repeat, is restricted to those situations involving the reconstruction or alteration of buildings within which nonconforming uses already exist. Chatlos gains no comfort, then, from this provision on which he relies, because the change he desires is not tied in with an alteration of his building. Section VII has no application to

him save in so far as its early provision permits his noncon-
forming use to continue as it is.

Accordingly, the writ is denied and the respondent may
recover his costs.